# MAY, 1922.

### W. J. Harris v. The State.

No. 6579.   Decided March 1, 1922.

Rehearing Denied May 10, 1922.

**1.—Robbery—Special Venire—Jury and Jury Law—Drawing Special Venire.**

Where exception was reserved to the refusal of the trial court to quash the special venire writ, and it appeared from the record, on appeal that in drawing the veniremen the clerk put into the box the names of all the persons designated by the jury commissioners for regular jury service, amounting to 270 men, and that of these one hundred had previously been drawn one time for special venire service, and that on the list drawn for appellant there were the names of 29 veniremen previously drawn for service, and another special venire, 20 of whom failed to respond to the summons, and in completing the jury it was necessary for the sheriff to summons talesmen, there was no reversible error, in not appearing that any right on the part of the jurors to claim the exemption had been made or any default in the attendance of qualified jurors in number corresponding to the venire ordered and drawn.

**2.—Same—Special Venire—Rule Stated—Jury and Jury Law—Exemption.**

In order to obtain relief from jury service, for a given week, the juror may show that he has served on two special venires, or, if seeking relief from special venire services, he might show that he served one week as a regular juror and on one special venire, but unless some such facts are made to appear, he could not claim such exemption, and where it was no: shown in the instant case that such exemption was claimed by the jurors, and the bill of exceptions having failed to show that any such right was claimed, or any default in the attendance of qualified jurors there was no error in overruling the motion to quash the venire writ. Following Moore v. State, 49 Texas Crim. Rep., 629, and other cases.

**3.—Same—Co-ercion—Sufficiency of the Evidence—Accomplice—Corroboration.**

Where defendant claimed, upon trial of robbery, coercion on part of his co-defendant in participating in the robbery, and it was not shown that the defendant had connection with the conspiracy, but it appeared from the record on appeal that defendant and his codefendant and others associated and conspired to commit the robbery antecedent thereto, the conviction is sustained, and the corroboration of the accomplice's testimony was sufficient. Following Stanley v. State, 16 Texas Crim. App., 401, and other cases.

Appeal from the District Court of Harrison.   Tried below before the Honorable P. O. Beard.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Scott & Lane,* and *Jones, Sexton & Jones, for* appellant.—Cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, PRESIDING JUDGE.—The appeal is from a judgment convicting the appellant of robbery and fixing his punishment at confinement in the penitentiary for a period of five years. Needham v. State, 90 Texas Crim. Rep., 86, is a companion case.

Exception was reserved to the refusal of the court to quash the special venire writ. In drawing the veniremen, the clerk put into the box the names of all the persons designated by the jury commissioners for regular jury service, amounting to two hundred and seventy men. Of these, one hundred had previously been drawn one time for special venire service, and on the list drawn for appellant there were the names of twenty-nine veniremen previously drawn for service on another special venire. Twenty of these failed to respond to the summon, and in completing the jury, it was necessary for the sheriff to summon talesmen.

Article 660a requires that in drawing the special venire, the clerk shall put into the box upon slips of paper the names of the persons selected for jury service during the term. See Acts of 36th Leg., Chap. 37.

In Article 661 it is said, in substance, that when the names of the persons summoned to do jury service for the term shall have been drawn *one time* on a special venire, the *special venire list* required by R. S., Art. 5137 shall be used for subsequent venires, and it has been held that those drawn *one time* should be omitted in the drawing of special veniremen from the list of regular jurors. Saye v. State, 50 Texas Crim. Rep. 569. This procedure was not followed in the instant case, as indicated above. The statutory provisions designating the persons from whom a special venire shall be selected have generally been held to require observance unless an absence of injury appears. For instance, where the statute authorized sixty men to be summoned for the special venire, the selection of seventy-five was held error. Harrison v. State, 3 Texas Crim. App. 563. It was also held error to mix the names designated by the jury commissioners for special venire service with those selected for regular service and draw the venire from the whole. Moore v. State, 49 Texas Crim. Rep., 629; Johnson v. State, 86 Texas Crim. Rep. 567.

In Clayton's case, 83 Texas Crim. Rep. 59, it was held error to use a part only of the persons selected by the jury commissioners for jury service for the term who were available for special venire under Articles 660 and 661, supra, and to supplement them with persons summoned by the sheriff, the court holding that the statute should

have been followed and the list of jurors selected by the jury commissioners used.

In Gunn's case, 90 Texas Crim. Rep., 209, the action of the officers in drawing the venire list in failing to take the names as they came from the wheel, as provided by Article 660, Vernon's Code of Crim. Proc., was held to require that the venire writ be quashed on motion.

In Oates' case, 48 Texas Crim. Rep. 136, the facts revealed that the court, in drawing the special venire,, failed to follow the provisions of Article 647 as it then existed and which designated the persons from whom the special venire list should be drawn. The refusal to quash upon that ground was held error.

In Hunter's case, 34 Texas Crim. Rep. 602, the court ordered a venire of ninety men. But sixty were drawn by the clerk. It became necessary to resort to talesmen to secure the jury. The denial of the motion to quash was held error fatal to the conviction. It was there said, in substance, that the purpose of the statute providing the list of men from which to drawn the special venire was to withdraw as far as practicable from the hands of the sheriff and his deputies the selection of jurors, and that the action of the clerk in reducing the number of the special venire having rendered it necessary to resort to talesmen, its effect was to defeat the purpose of the law. Illustrating the rule which we have stated above, we mention the cases of Horn v. State, 50 Texas Crim. Rep. 406; Osborne v. State, 23 Texas Crim. Rep. 445; Funk v. State, 84 Texas Crim. Rep. 402; Bates v. State, 43 Texas Crim. Rep. 589; Logan v. State, 54 Texas Crim. Rep. 77; Knight v. State, 66 Texas Crim. Rep. 335; 147 S. W. Rep. 268. We also refer to numerous cases listed by Mr. Branch in his Ann. Tex. Penal Code, Sec. 523. The court in the instant case had, in accordance with the law, ordered a special venire of one hundred men for the trial of appellant's case. See Code of Crim. Proc., Art. 655 and 668. The procedure pursued resulted in drawing but seventy-one men from the list which the law required should be used. From these a jury was not obtained, and it became necessary to complete the jury from talesmen summoned by the sheriff. It is therefore made apparent that appellant's right to the special venire which the law and the order of the court entitled him was curtailed. He did not waive his rights but asserted them in a proper and timely manner. His motion to quash the venire should have been sustained and a new venire ordered and drawn in accord with the law.

The injured party, appellant Harris, and others were engaged in gambling with cards. Russell Jones entered the apartment, exhibited a pistol and directed the appellant to get from the injured party and others their money. This he did, taking from Rausheck about $400.

It is appellant's theory that in so doing he acted under duress. The State contends that he acted with Jones in pursuance of previous agreement.

Jones was wounded in the flight with officers after the robbery, and upon the trial, he testified as a witness for the State on the promise of immunity.  He stated, in substance, that the robbery was pre-arranged by agreement with him and the appellant and others whom he named; that it was conducted in accord with the plan designed. See Needham v. State, supra.

It is urged that the evidence indicating that appellant's part in the robbery was taken as a result of coercion upon the part of Jones at the time of the robbery, is apparently conclusive and that in the absence of evidence sufficient (as measured by the legal rule pertaining to the corroboration of accomplice testimony) to show appellant's connection with the conspiracy, the conviction must fall.  In our judgment, the record is not bare of such evidence.  There was testimony showing the association of appellant and Jones and others named by Jones as co-conspirators antecedent to the robbery.  Those named by Jones as his confederates were either present at the time of the robbery or nearby, performing the parts which, according to the testimony of Jones, had been previously assigned to them.  The conduct of the appellant during the game of cards in which he took part, his leaving it and re-entering it, were described and denominated unusual.  The confederates designated by Jones were companions of the appellant after the robbery.  All these matters, including the fact that appellant, when addressed by Jones in these words: "Big Boy, I deputize you to get the money," proceeded with alacrity to search those present and to carefully abstract all of their funds, placing the money in a cap which was later handed to Jones, bear on the motive with which he acted.  The part he took, in connection with the other evidence, to which we have adverted, his demeanor before and after the robbery, we think was sufficient to authorize the jury to determine that the testimony of Jones to the effect that the appellant was a party to the conspiracy was corroborated.  Under our Penal Code, an act done under duress is not crime.  Penal Code, Art. 44; Branch's Ann. Tex. Penal Code, p. 24; Branch's Crim. Law, sec. 299.  Whether he was under dress or merely pretended to be so was a question of fact to be solved by the jury from the evidence before it.  Stanley v. State, 16 Texas Crim. App. 401.  That Jones commanded him to search the victims and take the money from them and that he obeyed raises the issue of duress or coercion, but was not conclusive.  The command and the obedience were entirely consistent with the testimony of the accomplice Jones; so was the presence of the appellant and the other confederates named by Jones.  The part performed in the robbery by the appellant and others was that which Jones said to be done.  The intent with which the appellant acted was, we think, an inquiry for the jury.  The precedents upon the subject of duress and coercion are most often found among those cases in which the husband and wife have acted together in the commission of an offense, and in them the rule seems to be uniform, that

the presumption that she acted under coercion from her husband is but prima facie, and that from her participation and attending circumstances the jury is permitted to hold her responsible. Miller v. State, 25 Wis. St. Rep. 389; Russell on Crimes, 7th Eng. Ed., 95; People v. Wright, 38 Mich. St. Rep. 745; Edwards v. State, 27 Ark. St. Rep. 493; Arp v. State, 27 Ark. St. Rep. 357 and notes. We find, however, that the Supreme Court of Alabama, reviewing a judgment in which the death penalty was assessed, refused to disturb the verdict because of testimony to the effect that the homicide was committed by the accused under duress of two persons present at the time of the homicide, each armed with a double-barrel shotgun and threatening to kill him unless he killed the deceased. There was other testimony, however, to the effect that after the blow was struck, the accused rifled the pockets of the deceased of money found thereon, and some evidence supporting the idea that he might by diligence have escaped without committing the homicide. The court expressed the opinion that the motive which impelled the accused was a question of fact. In the instant case, a like question of fact arose and was submitted to the jury, accompanied by an instruction fully safeguarding the appellant's rights to immunity from conviction upon the uncorroborated testimony of the accomplice Jones.

We find no error save that committed in the refusal to sustain the motion to quash the special venire. Because of that, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

May 10, 1922.

LATTIMORE, JUDGE.—The State has challenged the correctness of our former opinion in an able motion for rehearing. We have again carefully reviewed the statutes and decisions thereunder. The changes made at times in the law regulating special venires has made it difficult to follow one line of authorities without conflict with others.

The present Article 660a of our Code of Criminal Procedure was omitted from said Code by the codifiers in 1911. It was re-enacted by the Thirty-sixth Legislature in 1919. Same reads as follows:

"Whenever a special venire is ordered in counties not using the wheel system and to which Article 660, Revised Code of Criminal Procedure of 1911 is not applicable, all the names of all the persons selected by the jury commissioners to do jury service for the term at which such venire is required shall be placed upon tickets of similar size and color of paper, and the tickets placed in a box and well shaken up; and from this box the clerk, in presence of the judge, in open court, shall draw the number of names required for such special venire, and shall prepare a list of such names in the order in which they are drawn from the box, and attach such list to the writ and deliver the same to the sheriff."

We find in the emergency clause of the bill enacting this, the following.

"The fact that there is confusion and uncertainty arising from the omission of the provisions of this Act from the Revised Statutes of 1911, leaving it in doubt as to the manner in which special venires may be selected in counties not having the jury wheel system, creates an emergency," etc.

No change was made at that time in Art. 661, Vernon's C. C. P., which must also be considered in this connection, and which is as follows:

"Whenever the names of the persons selected by the jury commissioners to do jury service for the term shall have been drawn one time to answer summons to a venire facias, then the names of the persons selected by the said commissioners, and which form the special venire list, shall be placed upon tickets of similar size and color of paper, and the tickets placed in a box and well shaken up; and, from this box, the clerk, in the presence of the judge, in open court, shall draw the number of names required for further venire service, and shall prepare a list of such names, in the order in which they are drawn from the box, and attach such list to the writ, and deliver the same to the sheriff; and it shall furthermore be the duty of the clerk, and he shall prevent the name of any person from appearing more than twice on all of such lists."

This article just quoted was enacted in 1905. See Chapter 14, General Laws, 29th Legislature. Said Chapter also contained the enactment of Art. 3159-a, now Art. 5137, Revised Civil Statutes, which directed the jury commissioners in counties of more than two thousand population, and which were not under the jury wheel law, to select one man for each hundred of population in such county, the men so selected to compose a special venire list, which special venire list should only be resorted to and used after the petit jurors had been drawn on a venire facias one time during the term. Said article specifically states that no citizen who has served as a petit juror for one week during any term of court shall, during said term, be compelled to answer summons to more than one special venire; nor shall any citizen be compelled to answer summons to a special venire more than *twice* during any term of court. In Moore v. State, 49 Texas Crim. Rep. 629, Judge Davidson discussed at length this enactment of 1905, and says:

"It will be observed that the law passed by the Twenty-ninth Legislature does not in any manner conflict with the previous law in regard to petit jurors drawn for service during the ensuing term. The only change in this respect is that it requires the jury commissioners to draw what is termed in this Act of the Twenty-ninth Legislature a special venire list. This is an additional list of names to serve on special venires exclusively, and these cannot be called

91 TEXAS CRIMINAL REPORTS. [May,

into service until the jurors summoned for regular service have been exhausted under the terms of the act, either by serving one week in the district court as petit jurors and once on the special venire, or *twice on special venires.* When this has been done, it is provided tha⁺ the clerk shall then resort to special venire jurors and the list selected specially for that purpose."

Further in the opinion this learned jurist says:

"The fact that the law says that these jurors shall not be compelled to serve on more than two venires, or upon one venire if they have served a week as petit jurors does not disqualify them. They may sit, unless they claim their exemption. The court cannot claim their exemption for them. Nor can he disqualify them from sitting in other cases. In discharging them from such service it must be done judicially, and the jurors upon claiming their exemption. They may have been willing to serve, and appellant may have been willing to select a jury from that list; Nor does the further provision of the law, which says that the clerk shall prevent the drawing of the names· more than twice, disqualify the jurors. The fact that the clerk may overlook the law, or commit an error or a mistake, in drawing the names, will not disqualify the jurors. They can claim their exemption if erroneously summoned, and it would be the duty of the court to stand them aside."

This construction of the law has not been questioned, nor can it be, for the manifest purpose of the statute was to make more general the jury service among our citizens and to fix a limit beyond which such citizen could not be compelled to do such service. No man can be compelled under the terms of this statute to serve more than twice on special venires during one term of court, and it appears from Judge Davidson's reasoning that if a man has served for a week on a petit jury and once additional during such term on a special venire, that he could thereafter claim his exemption. Equally emphatic in this opinion is the statement that the fact that the clerk of the court may overlook the law which says he shall prevent the drawing of the names of the jurors more than twice,—or commit some error or mistake in drawing the names,—this will not disqualify the jurors so summoned, and that they are the ones to claim their exemptions.

In Saye v. State, 50 Texas Crim. Rep. 572, the accused complained of the fact that from the 252 names which constituted the jury for the term, 100 names were drawn for a special venire prior to the drawing of the venire in his case, and that the names on said prior venire had not been put back in the box before his venire was drawn. No further discussion of the contention that this was error was indulged by this court than to say that the course pursued seemed authorized by the Act of the Twenty-ninth Legislature, supra. That this was in accordance with the provisions of such Act is beyond dispute. But there was no discussion in that opinion as to the law or what would be the holding of the court in a case such as the one

now before us. In Clayton v. State, 83 Texas Crim. Rep. 59, the trial court directed that the twenty-four names of the regular jurors for the week on which the Clayton case was set, and also twenty-four others to be summoned by the sheriff, should constitute the special venire. This was correctly held a direct violation of the provisions of the statute providing for the summoning of a special venire. In Johnson v. State, 86 Texas Crim. Rep. 572, Judge Davidson, again discussing the Act of the Twenty-ninth Legislature, supra, said:

"This Act provides for drawing venires in regard to petit jurors drawn for service during the term. The only change as to former laws is that it requires the jury commissioners to draw what is termed in the act a special venire list. This is an additional list of names to serve on special venires exclusively, and these cannot be called into service until the jurors summoned for regular service have been economized under the terms of the Act. When this has been done the clerk shall then resort to special venire jurors and the list selected specially for that purpose. In other words, the purpose of the Act is to require the exhaustion of the petit jurors before resorting to these specially drawn for special venire service, and for the further purpose of using those jurors so specially drawn as talesmen. Moore v. State, 49 Texas Crim. Rep. 629. This in no way conflicts with the recent case of Elbert Taylor v. State. It is unnecessary to go into the question, or discuss it in any phase as to the attitude the case would have been in had the jurors for the term been exhausted and talesmen were called. This did not occur. So the question narrows itself sharply as to whether or not, under the circumstances depicted in the bill of exceptions, and admitted to be true, the court erred in not quashing this list, and whether he erred in the manner of selecting the special venire. As we understand the terms of this statute, the jurors selected for jury service during the term must first be economized and used as required by the statute. Until this has been done the list of jurors drawn for the special venire list are not authorized to be placed in the jury box and drawn to serve on special venires. This question was decided in Moore v. State, supra. There were 144 jurors drawn for jury service. These should have been placed in a box and a venire of seventy-five names drawn without resorting to those drawn for the special venire list by the jury commissioners. This was not done; but instead, not only the 144 names were placed in the box, but the 150 drawn by the jury commissioners for special jury service were also placed in the box, and the seventy-five drawn from it in approximately equal numbers as to those on the special venire list and those on the jury service list for the week. This was not authorized by the statute, and the jury was not selected in accordance with law, but in violation of its terms. A jury trial and the manner of enforcing such trial is strictly guarded by the statute. The Legislature having provided this means for obtaining

a jury, the court was not at liberty to set it aside. The question of injury does not enter into the case.''

In Gunn v. State, 90 Texas Crim. Rep., 209, 234 S. W. Rep. 399, there appeared an unauthorized rejection of the names of special veniremen as the venire was being drawn.

. We are led to examine anew the bill of exceptions to the refusal to quash the venire in the instant case. It was not urged as ground for said motion that a smaller or different number of men were summoned than was drawn, or that a different number' was drawn than ordered,—so necessarily cases involving these questions are not in point. It is only stated in said motion that the district clerk placed 270 names of jurors in a box and that he then took therefrom 100 names to constitute a special venire in the Cornwall case, and that he then put said 100 names back in said box and drew therefrom the venire in the instant case, and that there were twenty-nine names identical on each of said venires, nine of whom were alleged to be persons in attendance upon court at the instant trial. This is alleged to be not in accordance with law. As sustaining the allegations of this motion, the bill of exceptions shows that appellant offered in evidence the two venires and placed the district clerk on the stand, who said that he drew the Cornwall venire of 100 men and put the names of said venire men in an envelope, which envelope he put back in the box, and thought he had sealed it but that evidently same was not sealed, for when he drew out of said box the venire in the instant case it appeared that some of the names in said envelope had gotten back among the others and were drawn in the instant case. No further evidence was offered in support of the motion to quash, and no other objections were raised to the formation of the jury than as above stated. The trial court qualifies the bill of exceptions and says that no evidence was offered showing what jurors were present or absent, and that no·complaint was directed at the venire for the non-attendance of any juror summoned thereon. We further observe that it is not made to appear that the twenty-nine jurors whose names appeared on both the Cornwall venire and that in the instant case, had in fact been drawn, summoned or served for any week of the term of the court. As we understand the law and its interpretation in Moore v. State, supra, even if the jurors themselves desired to take advantage of the exemption from jury service described in the act of the Twenty-ninth Legislature, supra, they would have to satisfy the court that they had been summoned *twice* before being summoned in the matter then before the court. In other words, in order to obtain relief from jury service for a given week, a juror might show that he had served on two special venires; or if seeking relief from special venire service, he might show that he served one week as a regular juror and on one special venire,—but unless some such facts were made to appear he could not claim such exemption. Based on the opinion in the Moore case, supra, there might be grave

doubt as to the right of the accused to complain if he could show no more than that by a mistake of the clerk names had been put on his venire list of men who had the right to claim their exemption, unless it was further made to appear that such men did in fact claim exemption. If they were present and willing to serve, it would be doubtful whether appellant would have any complaint at all.

In the instant case the bill of exceptions having failed entirely to show any right on the part of the jurors to claim the exemption, or any default in the attendance of qualified jurors in number corresponding to the venire ordered and drawn, the trial court did not err in overruling the motion to quash.

This being the only error for which reversal was ordered, the State's motion for rehearing will be granted, the judgment of reversal set aside, and an affirmance will be directed, and it is so ordered.

*Affirmed.*