Douglas Craddock DUSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 52622.

Court of Criminal Appeals of Texas.

Dec. 14, 1977.

James M. Pape and Edward A. Mallett, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Terry G. Wilson, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is from a conviction for driving a motor vehicle upon a public highway while intoxicated. After a verdict of guilty, the court assessed punishment at thirty (30) days in jail and at a fine of $200.00. Appellant was placed on misdemeanor probation for one (1) year. See Article 42.13, Vernon's Ann.C.C.P.

In his sole ground of error appellant urges the "trial court erred by including in its charge to the jury an instruction that 'To render duress a defense to a criminal charge, the act must be done when the party threatening the duress is actually present.' "

A brief recitation of the facts is necessary. On July 24, 1974 appellant was seen driving his automobile in a reckless manner near the intersection of South Shepherd and Westheimer Streets in Houston. A little later he collided with another vehicle in the 1700 block of South Shepherd not far from the Hobbit Hole Club.

Houston police officers Foulis and Scott, who investigated the accident, were of the opinion that the appellant was intoxicated. Appellant told the officers his bleeding lip was a result of an earlier fight at a bar.

A subsequent breathalyzer test reflected appellant's blood contained 0.20% alcohol. The question of intoxication was never disputed as appellant himself admitted he was intoxicated.

Bobby Cantu, owner of the Diablo Club, was called by the appellant. He arrived at his club about 5 p. m. on July 24, 1974 and found appellant "causing trouble." Appellant was table hopping and would also stand at the bar preventing the waitresses from getting their drink orders. Cantu observed that appellant was "high," and while he did not know how many drinks appellant had had, his current tab noted four. When appellant spilled a drink, Cantu ordered him to leave and escorted him out the rear door. Outside an argument ensued and when he saw appellant gesture as if to hit him, he struck appellant on the mouth and told

appellant to leave before he hit him (appellant) again. Appellant ran to his automobile and departed. He did not follow or chase appellant.

The twenty-three year old appellant testified he went alone to the Diablo Club about 3 p. m. on July 24, 1974 and began drinking Scotch and making a personal profile of some of the employees on the paper napkins noting character traits, etc. When he went to the bathroom, the napkins and his pen disappeared and he could not get a satisfactory answer from the waitress as to what happened to his notes so he changed tables. After he had been there awhile, he decided if he stayed until 6 p. m. he would be intoxicated so he telephoned a friend, Douglas Harrison, to pick him up at 6 p. m. so he wouldn't have to drive.

About 5 p. m. Cantu arrived and his troubles began. Appellant stated he could not get service so he went to the bar, and later began making selections on the juke box, which he apparently was not permitted to do. Before 6 p. m. Cantu ordered him to leave, and appellant related he left by the front door, and when he got to the side of the building Cantu came out the back door. Appellant acknowledged Cantu mistook a gesture he made and struck him in the mouth and knocked him down. Cantu then threatened to kill him if he did not leave the premises. Appellant ran to his automobile and left. The accident occurred a short time later about eighteen blocks or two miles away.

Appellant stated he would not have driven his automobile in an intoxicated condition if it had not been for Cantu's blow and threats. He was frightened and could not wait for Harrison and sought to reach his friends at the Hobbit Hole Club.

In submitting the defense of duress to the jury at the guilt stage of the trial the court charged in part as follows:

"In a prosecution for a misdemeanor offense it is an affirmative defense to prosecution that the defendant engaged in the proscribed conduct because he was compelled to do so by force or threat of force.

"Compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

"To render duress a defense to a criminal charge, the act must be done when the party threatening the duress is actually present. The party is actually present if he is in such proximity to the place where the act is done as to have control over the person threatened. The defense of duress is unavailable if the defendant intentionally, knowingly or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion. . . ."

Appellant contends the court failed to respond to his objection that the charge was erroneous in that it instructs the jury that the party threatening the duress must be "actually present."

Former Article 38, Vernon's Ann.P.C., 1925, relating to duress, did provide in part:

"3. The act must be done when the person threatening is actually present."

This was construed to mean that a threatening party is actually present if "the person shall be so near as to have the party with the means at his command under his power and control at the time he does the act." *Paris v. State*, 35 Tex.Cr.R. 82, 31 S.W. 855 (1895).

V.T.C.A., Penal Code, § 8.05, has replaced former Article 38. It reads:

"(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

"(b) *In a prosecution for an offense that does not constitute a felony, it is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by force or threat of force.*

"(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

"(d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion. "(e) It is no defense that a person acted at the command or persuasion of his spouse, unless he acted under compulsion that would establish a defense under this section." (Emphasis added.)

It is observed that the "actually present" requirement of former Article 38 is not found in the new statute.

It appears, however, that while the court in the instant case charged in accordance with § 8.05, supra, it added the former requirement of "actually present." This addition should not have been made to the court's charge on duress. Nevertheless, no reversible error is presented.

The evidence did not raise the defense of duress and the trial court need not have charged on the same.

V.T.C.A., Penal Code, § 2.04(c), provides:

"The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense."

There was no evidence of "force or threat of force" to cause the appellant to become intoxicated. He admitted he voluntarily went to the Diablo Club and became intoxicated. He then began having difficulties which led to his eviction during which he was struck and threatened if he did not leave the premises. There was no evidence of "force or threat of force" to leave the premises by means of driving an automobile and only by that means despite the fact appellant was intoxicated. Cantu apparently did not know how appellant had arrived at the club. While it might not have been practical for appellant to return to the club to call his friend, Harrison, or others, or to call a taxicab, there was testimony that telephones were available at business establishments within two blocks of the Diablo Club. Cantu testified he did not pursue the appellant, and the appellant testified that after he left in his car he didn't think anyone was chasing him and he didn't know why he didn't go to a telephone down the street and call a friend. He did state he did not stop prior to the accident to call a cab because he "was just so shook up and scared I just kept going and tried to get to the Hobbit Hole where I knew some people."

It should be remembered that the offense is driving while intoxicated. That offense was shown to have occurred on a public highway some two miles or eighteen blocks from where the altercation with Cantu, who was not pursuing him, occurred. Under the circumstances, the court need not have charged on the defense of duress, and the fact that the court gave a charge on duress, even though erroneous as mentioned, does not constitute reversible error.

For the reasons stated, appellant's contention is overruled. The judgment is affirmed.

ROBERTS, Judge, dissenting.

Appellant's sole contention is that the trial court reversibly erred in its instruction to the jury on the issue of duress. I would sustain this contention and reverse.

The record reflects that on July 24, 1974, appellant was observed driving recklessly on South Shepherd Street in Houston. In the 1700 block of South Shepherd, near the Hobbit Hole Club, he ran into an automobile driven by Warren Gourney.

Houston Police Officers R. F. Foulis and J. L. Scott investigated the accident. Based on their experience and their observations of appellant, both Foulis and Scott concluded that the appellant was intoxicated.

Both officers testified that the appellant had a badly split and bleeding lip at the time of their arrival at the scene of the accident. However, both also stated that appellant told them at the time that this injury was not a product of the collision but was instead the result of an earlier fight at a bar.

Houston Police Officer G. W. Anderson testified that he was a certified breathalyzer operator. On July 24, 1974, the appel-

lant, who appeared to be intoxicated, was brought into Anderson's office. The appellant agreed to submit to a breath test. Anderson gave him the test, which showed that appellant's blood was 0.20% alcohol. The parties stipulated that the breath testing machine functioned properly at the time of this test.

Bobby Cantu, testifying on behalf of the appellant, stated that he was the owner of a topless "go-go club" called the Diablo Club. On July 24, 1974, he arrived at the club at 5:00 p. m. and found appellant "causing trouble." According to Cantu, appellant was table-hopping and interfering with the waitresses. After attempting several times to persuade appellant to sit down, Cantu saw appellant spill a drink. Cantu stated that appellant had had a good deal to drink by this time, which Cantu estimated to be approximately 6:00 p. m.

Cantu then ordered appellant to leave the Diablo Club and escorted appellant out the door. Once outside, the two men began arguing. Cantu believed that appellant was about to hit him, so he punched appellant on the mouth. According to Cantu, he then told appellant to leave "before I hit him again." Appellant ran to his car and left.

The appellant took the stand and attempted to explain away his disruptive behavior. However, he admitted that much of Cantu's testimony was accurate and that he was intoxicated when he left the Diablo Club at approximately 5:40 p. m.

Agreeing with Cantu's testimony, appellant stated that shortly after he walked outside the Diablo Club Cantu misinterpreted a gesture of appellant's and hit the appellant, knocking him down. The appellant testified that at this time Cantu was "really, really irate, very angry."

The appellant also testified that Cantu's threats included a threat to kill appellant if appellant did not leave the area immediately. In response to these threats, appellant ran to his car and drove away.

The appellant also testified that he had previously arranged to meet Doug Harrison in the club's parking lot at 6:00 p. m. Aware of his intoxication, appellant intended to have Harrison drive him away from the club, but his enforced departure twenty minutes before 6:00 o'clock made this meeting impossible.

The appellant also stated that if he had not been forced by Cantu's blow and threats to leave immediately, he would not have driven in his intoxicated condition. He also testified that if he had not been forced to leave, and if Harrison had not come to the parking lot as scheduled, he would then have gone inside the club and used the telephone there to call for a taxi. These actions were foreclosed, according to appellant, by his fear that Cantu would kill him.

The appellant testified that when he left the Diablo Club he was on his way to the Hobbit Hole Club to use that club's telephone. It was during this trip that he had the collision with Gourney. Appellant acknowledged that the distance between the Diablo Club and the Hobbit Hole was approximately eighteen blocks; he stated, however, that he did not stop sooner to call a cab because he "was just so shook up and scared I just kept going and tried to get to the Hobbit Hole where I knew some people."

The trial court charged the jury on the defense of duress. However, as part of this instruction the court charged the jury as follows:

"To render duress a defense to a criminal charge, the act must be done when the party threatening the duress is actually present. The party is actually present if he is in such proximity to the place where the act is done as to have control over the person threatened."

This instruction was a proper one under our former Penal Code. Article 38, V.A. P.C.; *Paris v. State*, 35 Tex.Cr.R. 82, 31 S.W. 855 (1895).[1]

1. Article 38 provided:
 "A person forced by threats or actual violence to do an act is not liable to punishment for the same. Such threats, however, must be—
 "1. Loss of life or personal injury.

The appellant objected to this portion of the court's definition of duress and requested the following special charge:

"In a prosecution for an offense that does not constitute a felony, it is an affirmative defense to prosecution that the defendant engaged in the proscribed conduct because he was compelled to do so by force or threat of force.

"Compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

"The defense provided by this section is unavailable if the defendant intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.

"The burden of proof is on the defendant to prove an affirmative defense by a preponderance of the evidence. The term 'preponderance of the evidence' means the greater weight of credible evidence.

"Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the defendant did commit the offense of driving while intoxicated as alleged in the information, but you further find by a preponderance of the evidence that the defendant engaged in the proscribed conduct because he was compelled to do so by force or threat of force, you will acquit the defendant and say by your verdict 'not guilty.' " [2]

Article 38 has been replaced by Section 8.05 of the 1974 Penal Code, which provides as follows:

"Sec. 8.05. Duress

"(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

"(b) In a prosecution for an offense that does not constitute a felony, it is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by force or threat of force.

"(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

"(d) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.

---

"2. Such as are calculated to intimidate a person of ordinary firmness.

"3. The act must be done when the person threatening is actually present.

"The violence must be such actual force as restrains the person from escaping, or such ill-treatment as is calculated to render him incapable of resistance."

In *Paris*, the court held:

"While it is true that the literal language of the article in question requires the party duressing another to do an unlawful act to be actually present at the time, yet we apprehend that a proper construction of this section means only that the person shall be so near as to have the party with the means at his command under his power and control at the time he does the act; and a person 20 or 30 paces from the immediate place of the killing, armed with a pistol or shotgun, might have the person doing the act as much within his power and control as if he was only a few feet distant from him when he performs the act. In one sense, W. G. Parish was actually present at the time of the killing, and the language of the court might embrace the idea of his actual presence, but yet it may have been misunderstood, and the jury might have been misled thereby, and believed that the court required them to find that he was at the immediate spot of the killing before they would allow the defense of duress . . . ."

*Paris v. State*, supra at 95–96, 31 S.W. at 858.

Thus the holding in *Paris* makes it clear that although Article 38 required actual presence, the issue of duress was raised under our former Code whenever the evidence suggested that the accused was in such close proximity to the person threatening him that that person had "power and control" over the accused.

2. Appellant's objection to the charge and his special requested charge were timely filed in writing with the court. See Arts. 36.14, 36.15, V.A.C.C.P.; *McCloud v. State*, 527 S.W.2d 885 (Tex.Cr.App.1975). The court overruled the objection and denied the requested charge.

"(e) It is no defense that a person acted at the command or persuasion of his spouse, unless he acted under compulsion that would establish a defense under this section."

A reading of Section 8.05 reveals that the requirement of actual presence has been removed from our duress statute. Instead, our current statute provides that one raises the affirmative defense of duress *in misdemeanor cases* where the evidence suggests that the accused was compelled to commit the offense by force or the threat of force. V.T.C.A., Penal Code, Section 8.05(b). Such compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." V.T.C.A., Penal Code, Section 8.05(c).

In felony cases, however, the accused is put to a significantly greater burden in raising duress as an affirmative defense.[3] He must show that his criminal act was compelled by the "threat of imminent death or serious bodily injury to himself or another." V.T.C.A., Penal Code, Section 8.05(a).

This distinction between felonies and misdemeanors is important for two reasons. First, it reveals a Legislative intention to make the affirmative defense of duress more readily available to those charged with misdemeanors; unquestionably an accused has a lesser burden when he is attempting to show that he was coerced by force or the threat of force than he does in proving that he was compelled to act by a threat of imminent death or serious bodily injury. See V.T.C.A., Penal Code, Section 1.07(a)(34).

However, a second, and—for this case—more important, feature of this distinction between felony and misdemeanor duress is that in felony cases the compulsion must be "imminent" while in misdemeanor cases there is no requirement that the compulsion be close in time. Accord: Practice Commentary to Section 8.05, 1 V.T.C.A., Penal Code, page 234.

This distinction is important because it indicates that the Legislature was aware of *time* limitations when it drafted Section 8.05. Support for this view can be found by comparing Section 8.05 with the two statutes from which it was derived: Section 2.09 of the Model Penal Code[4] and Section 8.04 of the 1970 State Bar Proposed Revision of the Texas Penal Code.[5] Those two

---

**3.** This greater burden for felony duress is similar to the provisions of duress statutes in those states which have refused to recognize the defense at all for the most serious crimes. See comment to Section 2.09 (Duress as a Defense), ALI, Model Penal Code, Tentative Draft No. 10, p. 2.

**4.** "Section 2.09. Duress.

"(1) It is an affirmative defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

"(2) The defense provided by this Section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

"(3) It is not a defense that a woman acted on the command of her husband, unless she acted under such coercion as would establish a defense under this Section. [The presumption that a woman, acting in the presence of her husband, is coerced is abolished.]

"(4) When the conduct of the actor would otherwise be justifiable under Section 3.02, this Section does not preclude such defense." ALI, Model Penal Code, Proposed Official Draft, p. 40.

**5.** "Sec. 8.04. Duress

"(a) It is a defense to prosecution that the actor engaged in the conduct charged to constitute an offense because he reasonably believed he was compelled to do so by the threat or use of unlawful force against his person or the person of another, which threat or use of unlawful force a person of ordinary firmness in the actor's situation would not have resisted.

"(b) The defense provided by this section is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.

"(c) It is no defense that a woman acted at the command or persuasion of her husband, unless she acted under compulsion that would establish a defense under this section.

"(d) If the actor's conduct is otherwise justifiable under Section 9.21 (necessity), this sec-

proposed statutes are so similar to Section 8.05 in both language and structure that one can scarcely doubt that the two earlier statutes were the models for the duress statute which the Legislature ultimately adopted.

However, there are two basic differences between Section 8.05 and its two models: its distinction between felony and misdemeanor duress, and its imposition of a time limitation on felony duress that is not imposed on misdemeanor duress.

From this I can only conclude that the Legislature was aware of *time* limitations when it drafted the duress statute. It follows that although an *imminent* threat is required to raise the defense in a felony case, the force or threat of force involved in misdemeanor duress need not be imminent or even close in time.

It also follows that a Legislature which made these careful distinctions between *time* limitations was equally aware of distance, or locational, limitations, and that it knew it was abolishing the requirement that the person threatening the duress be physically present. Indeed, considering the clear and explicit language of Article 38(3) of the former Code, no other conclusion can be reasonably defended.

I would therefore hold that Section 8.05 means what it says: In misdemeanor cases, the affirmative defense of duress is not expressly limited by either time or distance, and actual presence is not explicitly required.[6] What is required is that the accused be compelled by force or the threat of force which would render a person of reasonable firmness incapable of resisting the pressure.[7] It follows that the court's charge in this case was erroneous.

The majority holds, however, that the error in the charge was harmless, even if it be conceded that actual presence is no longer required by the statute. The majority argues that the appellant was not entitled to a charge on duress at all, since there was no testimony that anyone forced him to drive an automobile or to become intoxicated.

The majority apparently considers the appellant's testimony to be without value. The appellant testified that Cantu had struck him and knocked him to the ground; that Cantu was extremely angry; and that Cantu threatened to kill him if he did not leave immediately. This testimony was sufficient to raise the issue of the existence of the affirmative defense of duress. In responding to the kind of "force and threat of force" exerted here by Cantu, a person of reasonable firmness would be justified in yielding to this pressure by attempting to get away from the Diablo Club as quickly as possible, even if it meant driving while intoxicated. Compare *White v. State,* supra; *Harris v. State,* 91 Tex.Cr.R. 446, 241 S.W. 175 (1922).

In this regard, it should be remembered that the offense did not occur *only* at the location of the collision—that location is merely the place where the offense was first discerned by police officers. In fact, the evidence is undisputed that appellant began committing the offense as soon as he left the parking lot of the Diablo Club. See *Graves v. State,* 539 S.W.2d 890 (Tex.Cr. App.1976) (majority and concurring opinions).

Therefore, I would hold that the appellant in this case did raise the affirmative defense of duress.

tion does not preclude that justification." Tex. Pen.Code: A Proposed Revision, p. 70 (1970).

6. This is not to say that time and distance can never be factors in determining the issue of duress; in many cases they will be factors. However, they should not be conclusive factors; they should be pertinent only to the extent that they support the statutory definition of duress.

7. It should be remembered that in Texas duress has traditionally been a defense created solely by statute. See V.T.C.A., Penal Code, Sec. 8.05 (1974); Art. 38, V.A.P.C. (1925); Art. 44, Vernon's Tex.Cr.St. (1916); Art. 43, Tex.Pen.Code (1879); Art. 45, Tex.Pen.Code (1856); *Stanley v. State,* 16 Tex.App. 392 (Austin Term, 1884); *Paris v. State,* supra; *White v. State,* 150 Tex. Cr.R. 546, 203 S.W.2d 222 (1947). Compare *Marks v. State,* 144 Tex.Cr.R. 509, 164 S.W.2d 690 (1942).

Moreover, it is well settled that the accused in a criminal case is entitled to a charge on every defensive theory raised by the testimony "whether the evidence is produced by the State or by the defense, whether it is strong or feeble, whether it is unimpeached or contradicted or whether it is conflicting." 31 Tex.Jur.2d, Instructions, Sec. 110, p. 660, quoted with approval in *Gautheir v. State*, 496 S.W.2d 584, 585 (Tex. Cr.App.1973). *Accord: Thompson v. State*, 521 S.W.2d 621 (Tex.Cr.App.1974). *Cf.* V.T. C.A., Penal Code, Sec. 2.04(c).[8]

What this means in this case is that just as the State presented evidence which, if believed, showed that the appellant was guilty of the statutory offense charged, so had the appellant given testimony which, if believed, established the statutory affirmative defense of duress. Therefore, just as the State was entitled to have its case correctly presented to the jury unburdened by an instructed verdict of acquittal, so was the appellant entitled to a correct charge which embodied the evidence brought out by the defense. It is not important to know whether the trial judge believed the State's evidence or that of the appellant—or neither; both were equally entitled to a proper charge.

Nor is it important whether this Court believes or disbelieves the appellant's testimony; in either event he is entitled to have that testimony fairly considered by the jury. In *Harris v. State*, supra, and *White v. State*, supra, this Court held that the issue of duress is a fact issue for the jury. Therefore, when such a question is raised by the evidence, the jury must be charged on the law of duress. *White v. State*, supra.

However, where the accused does receive a charge on duress, but that charge places upon him a greater burden than the statute allows, he is entitled to a new trial. *Stafford v. State*, 104 Tex.Cr.R. 493, 284 S.W. 581 (1926).

In the case before us the court's charge required the jurors to find that Cantu was actually present before they could find in favor of the appellant on the issue of duress. This was error which cannot be labelled harmless,[9] since it placed a burden on the appellant which he was not required to meet. *Stafford v. State*, supra.

Because the appellant was entitled to a charge on duress, and because he received a charge which placed an unlawful burden of proof upon him, the judgment should be reversed and the cause remanded.

PHILLIPS, Judge, dissenting.

I respectfully dissent. The majority affirms notwithstanding the admitted fact that the court's charge erroneously placed a greater burden upon the appellant to establish the defense of duress than is actually required by law on the theories that the defense of duress was not actually raised by the evidence and that there is no showing that the appellant distinctly pointed out said error to the trial court in a timely manner in compliance with Art. 36.14, V.A. C.C.P.

Appellant testified that Cantu struck him, knocked him to the ground, was extremely angry and threatened to kill him if he did not leave immediately. Appellant further testified that he did not stop prior to the accident because he was just so shook up and scared he just kept going and tried to get to the Hobbit Hole where he knew some people. Said evidence clearly raises the defensive theory that appellant was operating the motor vehicle under the compulsion of fear from Cantu's threat of force.

---

**8.** Section 2.04(c) provides:
    "The issue of the existence of an affirmative defense is not submitted to the jury unless evidence is admitted supporting the defense."

**9.** This Court has held that the "harmless error" provisions of Art. 36.19, V.A.C.C.P., *by their own terms* apply *only* when the requirements of Articles 36.14, 36.15, 36.16, 36.17, and 36.18,

V.A.C.C.P., have *not* been complied with. *Dowden v. State*, 537 S.W.2d 5, 6, n. 1 (Tex.Cr. App.1976). As noted earlier, the appellant in this case did comply with Articles 36.14 and 36.15 by timely filing, in writing, his objection to the court's charge and his special requested charge. Article 36.19 does not apply. *Dowden v. State*, supra.

The fact that appellant did not think he was being chased does not detract from his almost certain recognition of the fact that pursuit at any moment was definitely a possibility. The majority apparently also gives great significance to appellant's testimony that he didn't know why he didn't go to a telephone down the street and call a friend or stop prior to the accident and call a cab. The failure of a person acting under compulsion from fear to choose the wisest of the existing alternatives is entirely consistent with reasonably expected consequences of fear. In fact, our statutory definition of "adequate cause" under V.T.C.A., Penal Code, Sec. 19.04(c), recognizes that terror can render the mind of a person of ordinary temper incapable of cool reflection.

Appellant filed one separate one and one-half page, two paragraph instrument entitled "Defendant's Requested Special Charge and Objection to Court's Charge Defining Duress". It amounted to an unusually distinct and specific instruction pointing out to the trial court that the actual presence of the threatening party was erroneously required by the court's charge on the defense of duress and that such was not an element of said defense under the statute. V.T.C.A., Penal Code, Sec. 8.05. The trial judge wrote on the bottom of said combined objection and requested instruction:

"Order

The Defendant's requested instruction is *denied,* to which the Defendant excepts.

/s/ Neil McKay
Judge"

Thus, appellant's specific and distinct objection was denied and it is immaterial what the trial judge called same when overruling it.