**Wynona Ladorace KESSLER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2-92-001-CR.**

Court of Appeals of Texas,
Fort Worth.

March 9, 1993.

Publication Ordered March 18, 1993.

Reginald Wilson, Wichita Falls, for appellant.

John W. Brasher, Wichita Falls, for the State.

Before HILL, C.J., and DAY and HICKS, JJ.

## OPINION

PER CURIAM.

Appellant, Wynona Ladorace Kessler, appeals from a jury verdict finding her guilty of burglary of a habitation. *See* TEX.PENAL CODE ANN. sec. 30.02(a)(1) & (d)(1) (Vernon 1989). After appellant pled true to the enhancement paragraph, the jury assessed her punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division.

We reverse and remand for a new trial on punishment.

In her first two points of error, appellant contends the trial court erred: in failing to grant a mistrial after a police officer witness made a statement which allegedly informed the jury that appellant is a criminal generally; and in refusing to permit appellant's two daughters to testify relating to appellant's affirmative defense of duress.

Appellant's third and fourth points of error deal with alleged error at the punishment phase of the trial. As discussed later in this opinion, the State concedes that in light of a recent Texas Court of Criminal Appeals case, this cause should be reversed as to punishment and remanded for a new punishment hearing.

The sufficiency of the evidence is not challenged; therefore, we will only briefly recite the facts. Appellant was apprehended by the Wichita Falls police at 9:30 p.m. on April 24, 1991 as she was coming out of the complainant's house. At the time of her arrest appellant was with James Hardin, and was in possession of property taken from the complainant's house. Several Wichita Falls police officers testified regarding: police surveillance of the area due to numerous burglaries of houses whose owners had recently canceled their subscriptions to the *Wichita Falls Times and Record News;* the successful attempt by the police to locate appellant's vehicle in the parking lot of a nearby apartment complex; and the inventory of the contents of the vehicle (tools which were

believed to be burglar tools, and a piece of paper that had street locations and telephone numbers, one of which corresponded to the complainant's house).

The complainant testified he was visiting his son in Miami at the time of the burglary, and he had recently canceled his subscription to the *Wichita Falls Times and Record News*. He stated he had not given permission to appellant or James Hardin to enter his house. He identified as belonging to him numerous items that were found in the possession of appellant and James Hardin at the time of their arrest. These items had been inside the complainant's house when he went to Miami.

Appellant did not testify. However, she called two witnesses in an attempt to convince the jury she was compelled to commit the burglary because she was afraid of James Hardin and the harm he would .inflict on either her or her daughters if she did not comply. *See* TEX.PENAL CODE ANN. sec. 8.05(a) (Vernon 1974) (duress is an affirmative defense to prosecution).

■ In her first point of error, appellant complains of a statement made by Wichita Falls Police Officer Stout during the course of cross-examination by appellant's counsel. Officer Stout explained that after he arrested appellant he conducted a pat-down for weapons, and found earrings in her pocket. The following dialogue then ensued:

Q And for the jury, what is the purpose of a pat-down?

A Checking for weapons.

Q All right. And you're saying the earrings are evidence of a weapon?

A No, sir.

Q Why did you remove them?

A She was already under arrest. She had numerous property that belonged to the defendant; when I found these in her pocket I assumed that they were possibly also taken from the defendant.

Q Right. That's my client.

A I mean from the victim. I'm sorry.

Q But—So you were conducting a search of my client, not only for weapons but for evidence; is that correct?

A I assume you could say that, sir. I just removed the items in case they were property from the victim's house, yes, sir.

Q How about if they were property that belonged to my client?

A If they were property that belonged to your client then your client would get them back.

Q All right. Now, did the victim identify this property as belonging to him?

A Sir, I really don't remember, you know, all the items that were taken that the defendant—or that the victim did identify. I'm not even sure if we ever even looked at those to give the victim a chance to identify them.

Q All right. So they are in my client's possession, you automatically assume they belong to the victim?

A No, you don't auto—Yeah, I guess you could automatically assume that they could possibly belong to the victim. *It would be a good assumption, based on—*

Q All right. But—

A *—the defendant's history* and also the fact that—

[DEFENSE ATTORNEY]: Your Honor, I would object and request a mistrial.

THE COURT: Motion overruled. Jury instructed to disregard it. [Emphasis added.]

Appellant asserts the officer's comments about appellant's "history" clearly suggested to the jury that appellant had a history of being a lawbreaker, and a burglar. In other words, the officer's comment could only have the result of putting appellant on trial for being a criminal generally.

■ A defendant has a right to be tried for the offense for which he is charged, and not for some collateral crime or for being a criminal generally. *Couret v. State*, 792 S.W.2d 106, 107 (Tex.Crim.App. 1990) (per curiam); TEX.R.CRIM.EVID. 404(b). However, in the instant case any error resulting from the witness' response was not "clearly calculated to inflame the minds of the jury and ... of such character

as to suggest the impossibility of withdrawing the impression produced on their minds." *See Coe v. State,* 683 S.W.2d 431, 435–36 (Tex.Crim.App.1984). Any harm from the witness' non-responsive answer was cured by the trial court's prompt instruction to the jury to disregard the answer. *See id.; Tennard v. State,* 802 S.W.2d 678, 685 (Tex.Crim.App.1990) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). Appellant's first point of error is overruled.

In her second point of error, appellant claims the trial court erred in refusing to permit her two daughters to testify regarding her affirmative defense of duress. Appellant asserts the excluded evidence established she was compelled to participate in the burglary of complainant's house because she feared if she did not cooperate with Hardin, he would cause imminent death or serious bodily injury to appellant or her family.

Section 8.05 of the Texas Penal Code provides:

### § 8.05. Duress

(a) It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.

. . . .

(c) Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure.

TEX.PENAL CODE ANN. sec. 8.05(a) & (c) (Vernon 1974).

Appellant did not testify at trial. Her two daughters, Misty Sweetser and Ginger Kite, testified on her behalf in an effort to prove her affirmative defense of duress. Appellant sought to question the witnesses about certain events involving the witnesses, appellant, and James Hardin. Although the court permitted the witnesses to testify about some events concerning appellant and James Hardin, the court excluded portions of the witnesses' testimony.

Misty Sweetser, appellant's sixteen-year-old daughter who lives with appellant, was permitted to testify that: Hardin was appellant's former elementary school boyfriend; he lived with them on and off for six to twelve months prior to appellant's arrest on April 24, 1991; and appellant and Hardin would fight a lot, after which Hardin would leave the house and eventually return. The witness stated that during the evening hours on April 24, 1991, Hardin came to appellant's house uninvited. He was drinking a beer, and stayed for dinner with the family, after which they all played a card game. On that evening, Sweetser heard a conversation between appellant and Hardin. Sweetser answered affirmatively when asked at trial whether "[a]s a result of what you heard from that conversation were you personally afraid for yourself or for your mother?" Sweetser testified that based upon what she observed on that evening, it appeared to her that appellant was afraid of Hardin.

The trial court excluded the following testimony of Misty Sweetser:

1. She was afraid of Hardin because during the summer of 1990 he had tried to molest her.

2. She was afraid she would be harmed by Hardin if she told appellant of his advances.

3. She was afraid of Hardin because she had been present at a conversation between appellant and Hardin in the fall of 1990 when Hardin threatened to kill his ex-wife and take his children.

4. She feared Hardin because her sister, Ginger Kite, told her that in October [no stated year] Hardin tried to get Kite to go to bed with him and she wouldn't, and Hardin told Kite not to tell anyone or he would kill Kite and her kids.

5. She feared Hardin because in 1990 he had stated he was going to show her how to kill somebody.

6. In February 1991, she heard Hardin tell appellant he was going to kill one Fred Driskill because he thought Driskill had turned them in.

7. During the month of April 1991, she believed appellant was in fear for her life, and appellant said that if anything happened to her, Hardin would be a main suspect to go after.

8. On the evening of April 24, 1991, she overheard Hardin yelling at appellant "You had better go," to which appellant excitedly replied, "But I do not want to."

Appellant's other daughter, Ginger Kite, testified she and her two children were at appellant's house on the evening of April 24, 1991. When Kite questioned Hardin about where he was going, Hardin told her "Young lady, you've been warned." Kite interpreted this to be a reference to Hardin's having told her on another occasion that he would kill her and her children if Kite ever thought about getting Hardin into trouble with the police. Appellant was present on both occasions.

The following testimony of Ginger Kite was excluded by the trial court:

1. In September 1990, Hardin had threatened to kill Kite's children—no details were given.

2. On several occasions Hardin appeared at Kite's house and wanted to come in. When Kite refused, Hardin said if Kite ever told appellant, Hardin would kill Kite. Kite never informed appellant, except to tell her in November of 1990 that Hardin had shown up at her hotel room.

3. Kite stated that on April 24, 1991 when Hardin told her "Young lady, you've been warned," she considered this to be a threat and she was in fear of death or serious bodily injury.

Appellant claims the trial court usurped the jury's function by excluding evidence pertaining to appellant's affirmative defense, citing *White v. State*, 150 Tex.Crim. 546, 203 S.W.2d 222 (1947). In *White*, the

defendant took the stand and claimed that although he participated in an aggravated robbery, he did so under duress. *White*, 203 S.W.2d at 223. The trial court refused to charge the jury on the affirmative defense of duress, and the Court of Criminal Appeals held this was error. *Id.* In so holding, the Court quoted general language from a case where the charge had contained the defense of duress, and the defendant contended on appeal that he had proved this defense. *See Harris v. State*, 91 Tex.Crim. 446, 241 S.W. 175, 177 (1922) (opinion on reh'g). The Court in *Harris* opined that "Whether [the defendant] was under duress or merely pretended to be so was a question of fact to be solved by the jury from the evidence before it." *Id.*[1] (quoted in *White*, 203 S.W.2d at 223).

Appellant had to prove she was compelled to participate in the burglary "by threat of imminent death or serious bodily injury" to herself or her family. *See* TEX.PENAL CODE ANN. sec. 8.05(a) (Vernon 1974). While we agree with the language in *White*, we find it does not lend support to appellant's position in the instant case. There is no evidence that appellant's participation in the burglary was compelled Hardin's threat of *imminent* death or serious bodily injury to appellant or her family.

Section 8.05(a) does not define the term "imminent." The State contends all the evidence was properly excluded because a threat of imminent death or serious bodily injury requires a *present* threat, not a future threat, citing *Devine v. State*, 786 S.W.2d 268 (Tex.Crim.App.1989), and certainly not a past threat. The State maintains that although *Devine* dealt with "fear of imminent bodily injury or death" in conjunction with a robbery charge,[2] the construction of the term "imminent" remains the same. The Court in *Devine* commented that although Texas courts have not defined the term, other state courts have

---

1. The *Harris* Court originally ruled against appellant on the sufficiency of his defense of duress, but reversed on other grounds. *Harris*, 241 S.W. at 177. However, the State's motion for rehearing was granted, and the conviction was affirmed. *Id.* at 177–80.

2. *See* TEX.PENAL CODE ANN. sec. 29.02(a)(2) (Vernon 1989), which provides a person commits an offense if, in the course of committing theft and with intent to obtain or maintain control of property, he "intentionally or knowingly threatens or places another in fear of

defined "imminent" to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near," "certain, immediate, and impending," and "threatening to occur immediately." *Id.* at 270 (citations omitted). As noted by the Court in *Devine*, Black's Law Dictionary defines "imminent" to mean "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979); *Devine*, 786 S.W.2d at 270–71.

■ Keeping in mind these definitions, we hold that the threat of imminent death or serious bodily harm must be a present threat. Accordingly, we must determine if any of the excluded testimony relates to whether appellant was aware of such a threat by Hardin to inflict imminent death or serious bodily injury to appellant or her family.

■ We find that items 1—6 of Sweetser's testimony, and items 1 and 2 of Kite's testimony were properly excluded because there is no evidence that appellant was aware of the events described, and there is no correlation between these events and the burglary of April 24, 1991. Neither is there any evidence that the events described constituted threats of imminent death or serious bodily harm under section 8.05, which compelled appellant to participate in the burglary.

■ We find that item 3 of Kite's testimony was properly excluded because the jury had already been told about Hardin's April 24th statement to Kite, made in appellant's presence, and Kite's subjective state of mind was not relevant to whether appellant was compelled to commit the burglary because of threat of imminent death or serious bodily injury to Kite.

The only remaining excluded testimony is that of Sweetser summarized in items 7 & 8, above. In support of her argument that the excluded testimony was admissible, appellant asserts the controlling case is *Mul-*

*lins v. State*, 767 S.W.2d 166 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In that aggravated assault case, the investigating officer was prohibited from telling the jury that when appellant was arrested immediately after the assault, he said that at the time of the incident he was afraid of the complainant. *Id.* at 170. The appellate court found harmful error, holding the statement was relevant and admissible because it showed appellant's state of mind at the time he committed the offense. *Id.*

■ We find *Mullins* to be distinguishable from the case at bar. The *Mullins* court held the defendant's statement was admissible because it "related to the ultimate issue of whether [the defendant] had 'unlawfully, knowingly, and intentionally' threatened the complainant with imminent bodily injury." *Id.* The Court was concerned with the defendant's overall culpable mental state, not with the unique affirmative defense of duress, as in the case at bar. Additionally, in Mullins' statement to the arresting officer, he said he was afraid of the complainant *at the time of the offense*. In the instant case, Sweetser testified that: sometime during the month of April appellant said that if anything happened to her, Hardin would be a main suspect to go after; and that on the evening of the offense Hardin told appellant "You had better go," to which appellant responded "But I do not want to." Unlike the excluded statement in *Mullins* which occurred at the time of appellant's arrest, Sweetser's testimony did not show that appellant perceived a threat of *imminent* death or serious bodily injury.

We find the trial court did not err in excluding items 7 & 8 of Sweetser's testimony because the evidence did not relate to appellant's contention that she was compelled to participate in the burglary because of threats by Hardin of *imminent* death or serious bodily injury to herself or her family. *See Bernal v. State*, 647 S.W.2d 699 (Tex.App.—San Antonio 1982, no pet.).[3] Point of error two is overruled.

---

*imminent bodily injury or death." Id.* (emphasis added).

**3.** In *Bernal,* the appellant testified he participated in a group rape because he was afraid another

er participant or the complainant "might get violent" if he did not "take his turn." *Bernal,*

Appellant's fourth point of error alleges the trial court erred during the punishment phase of the trial in allowing evidence of extraneous offenses committed by appellant because no final convictions had been obtained for such extraneous offenses. During the punishment phase, numerous unadjudicated felony offenses (burglaries) were introduced into evidence over appellant's objections. On appeal, the State concedes this was error in light of a recent opinion from the Texas Court of Criminal Appeals. *See Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Crim.App.1992). The Court in *Grunsfeld* held that evidence of unadjudicated extraneous offenses is not admissible at the punishment phase under article 37.07, section 3 of the Code of Criminal Procedure, unless it satisfies that section's definition of "prior criminal record." *Grunsfeld,* at 523; TEX.CODE CRIM. PROC.ANN. art. 37.07, sec. 3 (Vernon Supp.1993).

The State further concedes that due to the number of unadjudicated extraneous offenses introduced, combined with the fact that appellant received the maximum punishment allowable—a life sentence—the State cannot in good faith argue that the error did not contribute to appellant's punishment. *See* TEX.R.APP.P. 81(b)(2). We commend the State on its objective analysis of the situation, and its agreement that the case should be reversed for a new trial on punishment. *See* TEX.CODE CRIM. PROC.ANN. art. 44.29(b) (Vernon Supp. 1993). Because we cannot say beyond a reasonable doubt that the erroneous admission of the evidence by the trial court did not contribute to appellant's punishment, we sustain appellant's fourth point of error.

Appellant's third point of error deals with other alleged error at the punishment stage. In light of the State's confession of error, appellant has filed a motion to abandon this point. We grant appellant's motion to abandon her third point of error.

The trial court's judgment is reversed on error committed during the punishment phase of the trial. The cause is remanded for a new trial on punishment. *See* TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1993).

647 S.W.2d at 706–07. The appellate court held there was no error in refusing to charge on the affirmative defense of duress when "[t]here was no indication whatever that [appellant] had been threatened with imminent death or serious bodily injury."