**Affirmed and Memorandum Opinion filed December 15, 2011.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

NOS. 14-10-00784-CR, 14-10-00785-CR, 14-10-00786-CR, 14-10-00787-CR,
14-10-00788-CR, 14-10-00789-CR, 14-10-00790-CR, 14-10-00791-CR,
14-10-00792-CR, 14-10-00793-CR, 14-10-00794-CR, 14-10-00795-CR,
14-10-00796-CR, 14-10-00797-CR, 14-10-00798-CR. 14-10-00799-CR,
14-10-00800-CR

———————————

**RHONDA RENEE ELLIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 16,366**

## MEMORANDUM OPINION

Appellant Rhonda Renee Ellis was convicted of unlawful restraint, burglary, theft of a firearm, and seven counts each of aggravated robbery and aggravated kidnapping. On appeal, she asks us to reverse her conviction on the ground that the trial court violated her constitutionally-protected right to due process of law by excluding testimony that she contends would have supported her duress defense. Because appellant failed to make an

adequate record of her own excluded testimony, and the testimony of two excluded witnesses was not relevant to appellant's duress defense, we affirm the convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of June 17, 2007, appellant and her boyfriend Marcus Lair broke into a mobile home in which the Snoe and Hough families were living. Appellant bound the hands and feet of Edward, Bobbie, Virginia, and Heather Snoe, but left Troy Hough Sr. and his sons Troy Jr. and Travis untied. At times appellant threatened to shoot some of the home's occupants, including a four-month old baby.

Appellant helped in stealing purses, keys, jewelry, cell phones, billfolds, electronics, prescription medication, and a gun from the home. At one point, Lair left the gun with appellant while he made Troy Hough Jr. help him carry the Hough family's television to appellant's vehicle. When appellant discovered that Troy Snoe Sr. had escaped, she and Lair fled the scene after firing several shots at the home. According to Travis Hough, one of the shots struck his ear. The evidence was conflicting as to whether the person firing from appellant's vehicle was appellant or Lair. Edward Snoe, Travis Hough, and Troy Hough Jr. testified that appellant was driving.

Shortly after leaving the scene, Lair and appellant were in a single-vehicle accident and appellant was thrown from her SUV. When passing motorist Thomas Johanson stopped to assist, Lair pointed a gun at him and ordered Johanson to load appellant into Johanson's truck. Johanson did so, and got back into the cab of truck, but Lair pulled him out and the two fought for the gun. Lair regained control of the gun and attempted to shoot Johanson in the head, but the gun did not fire. In the meantime, appellant had fallen out of the bed of Johanson's truck, and Lair ordered Johanson to put her back into the truck. Johanson did so, and when Lair walked some distance away, Johanson escaped.

2

Members of the Grimes County Sheriff's Department stopped the vehicle soon afterward, at which time Lair, who had been driving, switched places with appellant. Appellant then drove away at high speed, but stopped after a short pursuit by law-enforcement officers.

The State initially indicted appellant for thirty offenses, but some were dropped and others did not end in conviction. Appellant defended against the charges by attempting to prove that she acted under duress. Ultimately, a jury found appellant guilty of unlawful restraint, burglary, theft of a firearm, and multiple counts of aggravated robbery and aggravated kidnapping. The jury assessed punishment at seventeen years' confinement for each of the robbery and kidnapping charges, ten years' confinement for the unlawful-restraint conviction, and 180 days' confinement for theft of a firearm. The trial court ordered the sentences served concurrently.

## II. ISSUE PRESENTED

In the sole issue presented to this court, appellant contends that the trial court abused its discretion in excluding evidence that months or years before these events, Lair abused her. We review the trial court's evidentiary rulings for abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We will affirm the judgment if the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

## III. ANALYSIS

Appellant complains that the trial court erroneously excluded some of her own testimony and the testimony of two proposed witnesses that would have supported her claim of duress. "Duress" is an affirmative defense to prosecution available when the

3

actor engaged in criminal conduct because she was compelled to do so by a threat of imminent death or serious bodily injury. TEX. PENAL CODE ANN. § 8.05 (West 2011). For the reasons explained below, however, we conclude that appellant failed to preserve the trial court's alleged error in excluding her proposed testimony about "prior acts of abuse," and that the trial court did not abuse its discretion by excluding the testimony of two additional witnesses.

## A.   Appellant's Proposed Testimony Concerning "Prior Acts of Abuse"

Immediately before the appellant was called to testify, defense counsel made the following statement to the trial court:

> It was my intention when putting on the Defendant, Rhonda Ellis, to go into prior acts of abuse by Marcus Lair directed toward her. One of the reasons we've had to go back so far was because there was a period of time when he was incarcerated in Texas Department of Criminal Justice and that was the reason we wanted to go back, because there was that gap. We believe it's relevant to show the relationship between her and Marcus Lair for [the] purpose of our defense, and so we were just giving the Court a heads-up so we don't have to take a break with the jury in the back. So we're requesting that we be allowed to go into that during her testimony to establish a true relationship between her and Marcus Lair so the jury could see how she felt on that.[1]

The State objected to the relevance of Lair's conduct more than forty-eight hours before these events. The trial court sustained the objection, and appellant's counsel observed, "that doesn't mean that she is without the defense of duress." The trial court replied, "No, not at all; but I'm going to allow the Defense to go ahead and have testimony concerning issues of abuse within a reasonable time frame prior to this particular incident occurring."

---

[1] *But see Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. 1979) ("The duress defense . . . focuses on the conduct of the other person.").

Because the substance of the excluded testimony is not apparent from the context and she made no offer of proof, appellant has failed to preserve her complaint that the trial court abused its discretion by sustaining the State's relevancy objection. *See* TEX. R. EVID. 103(a)(2) (explaining that error may not be predicated on the exclusion of evidence unless, *inter alia*, "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked"); *see also Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009) (stating that counsel's summary of the intended testimony must be "reasonably specific" not only to allow the appellate court to determine whether the exclusion was both erroneous and harmful, but also to "permit the trial judge to reconsider his ruling in light of the actual evidence").

Moreover, appellant did testify about Lair's abuse, about her relationship with him, and about "how she felt on that." She stated that she had lived with Lair when she worked at a restaurant in Sugar Land, but the day after he was arrested for a different offense, she moved to Grimes County and her life was "better" without him. When asked whether she ever "stood up to" Lair, she stated that she did not do so because she was "petrified" and "terrified" of him. She further testified that they "never had gotten back in a relationship," although she lined up buyers to purchase drugs from Lair, then drove to and from Houston to bring Lair back to Grimes County to complete the drug sales and attend appellant's family's barbeque.[2] Appellant explained her conduct by saying, "I always have problems with finding a boyfriend, so I guess somebody is better than nobody." She further stated "[Lair] just brain-washed me" and "I never could tell him, 'no.'"[3] She further testified that before they went to the Hough's home, Lair insisted that she was moving back to Houston

---

[2] In connection with appellant's testimony that she traveled to another city to bring into her home a person of whom she was allegedly "terrified," it is worth noting that the defense of duress "is unavailable if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." TEX. PENAL CODE ANN. § 8.05(d).

[3] *But see* TEX. PENAL CODE ANN. § 8.05(c) (A person is "compelled" to commit a crime by the threat of imminent death or serious bodily harm "only if the force or threat of force would render a person *of reasonable firmness* incapable of resisting the pressure.") (emphasis added).

5

with him and she did not pack her things as he ordered her to do until he slapped her and pointed a gun at her. Thus, appellant did introduce evidence of her relationship with Lair, which was the stated purpose of the excluded testimony. We accordingly overrule appellant's issue as it pertains to her own testimony.

**B.** **Proposed Testimony of Fernando Hernandez and Tiffany Coleman**

Appellant did make an offer of proof regarding the proposed testimony of Fernando Hernandez and Tiffany Coleman. The record shows that at the time of trial in 2010, Hernandez had known appellant for about five years, but had not seen appellant in two or three years. Coleman also had known appellant for five or six years, and although she could not state when she had last seen appellant before the offenses, Coleman stated that she "didn't talk to her for years." Both Coleman and Hernandez worked with appellant at a restaurant in Sugar Land, but as previously mentioned, it is undisputed that appellant left that job and moved to Grimes County months before the charged offenses occurred, and there is no evidence that she had any contact with these witnesses after she moved. Both Hernandez and Coleman would have testified that when appellant worked in Sugar Land, they had seen her with bruises that she initially claimed were caused by walking into doors and similar accidents, but later claimed were inflicted by Lair. The State objected that the offered testimony was irrelevant, and the trial court sustained the objection.

On appeal, appellant contends that the trial court abused its discretion in sustaining the State's relevancy objection; the State responds that the proffered testimony was not relevant to appellant's duress defense because it is not evidence that appellant acted under a threat of "imminent" harm. *See* TEX. PENAL CODE ANN. § 8.05. We agree with the State.

To be considered imminent, the threat must be a present, immediate threat, or stated differently, one in which the threatened harm is "on the point of happening." *Cf. Devine v.*

6

*State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (explaining the meaning of "imminent bodily injury or death" in the context of the robbery statute and quoting BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979)). *See also Kessler v. State*, 850 S.W.2d 217, 222 (Tex. App.—Fort Worth 1993, no pet.) (citing the interpretation of "imminence" in *Devine* and holding that only a present threat is relevant to a defense of duress); *McDowell v. State*, 235 S.W.3d 294, 297 (Tex. App.—Texarkana 2007, no pet.) (holding that a defense of duress requires a present threat of imminent harm); *Anguish v. State*, 991 S.W.2d 883, 886–87 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that a threat made four days before a robbery was not imminent). All of the excluded testimony of Coleman and Hernandez referred to instances of Lair's alleged abuse months or years before the incident at issue here. This time period is too remote for that conduct to qualify as a present or imminent threat, so the proffered testimony of Coleman and Hernandez regarding that conduct was not relevant to appellant's defense of duress. Thus, the trial court did not abuse its discretion in sustaining the State's relevancy objection. We accordingly overrule appellant's issue as it pertains to the testimony of Hernandez and Coleman.

## IV. CONCLUSION

Because appellant failed to preserve her claim that the trial court erred in excluding some of her intended testimony, and because the offered testimony of two additional witnesses was not relevant to her defense of duress, we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Christopher.
Do Not Publish — TEX. R. APP. P. 47.2(b).

7