

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00240-CR

**RUBEN HERNANDEZ,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 34941CR

## MEMORANDUM OPINION

Ruben Hernandez was charged and tried for capital murder but convicted of the lesser-included offense of murder and sentenced to fifty years in prison. TEX. PEN. CODE ANN. § 19.02 (West 2011). Hernandez complains that the evidence was insufficient for the jury to have found him guilty of murder; that the trial court abused its discretion by not including an instruction in the jury charge on the issue of duress; that the trial court erred by excluding testimony (two issues); that the trial court abused its discretion by not admitting the written statement of the accomplice witness pursuant to the rule of

optional completion; and that the trial court abused its discretion by consolidating the trials of the three co-defendants or granting his motion for severance.[1]  Because we find no reversible error, we affirm the judgment of the trial court.

*Sufficiency of the Evidence*

In his first issue, Hernandez complains that the evidence was insufficient for the jury to have found him guilty of murder.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the

---

[1] Hernandez was tried with two co-defendants whose appeals are also pending before this Court: Fernando Juarez, No. 10-11-00213-CR, and Eric Maldonado, No. 10-11-00299-CR.

prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Factual Background*

Ruben Hernandez was an employee at an Exxon in Ennis, Texas, which was operated by Mohammed Hashemi, the victim. Hernandez was working with Hashemi on the evening of the murder. The evening of the offense Hernandez sent text messages to Juarez which told Juarez when Hashemi was leaving to take a deposit to the bank and how much money was in the deposit. Eric Maldonado, Fernando Juarez, and Isaiah Gonzalez[2] were in a vehicle awaiting Hashemi's departure. Maldonado, Juarez, and Gonzalez had decided not to rob Hashemi at the Exxon because it was too crowded. Instead they decided to ambush Hashemi on his way to the bank. Juarez was driving the vehicle. It appeared to Gonzalez that Juarez and Maldonado were familiar with Hashemi's route and knew the bank where he was going to make the deposit because they had been planning the robbery for a while. Maldonado was armed with a

---

[2] Isaiah Gonzalez was not tried with the other co-defendants because he made an agreement with the State for a reduced sentence in exchange for his testimony against Maldonado, Juarez, and Hernandez.

.380 caliber pistol and Gonzalez was armed with a Cobray Model M-11 9 millimeter firearm ("Mac-11"). Maldonado had purchased the .380 caliber pistol sixteen days prior to the offense.

Juarez pulled the vehicle in front of Hashemi to stop him and Maldonado and Gonzalez got out and approached Hashemi's minivan. Gonzalez stated that before they got out of the vehicle Maldonado had told him to empty his clip if anyone saw them. Gonzalez pointed the Mac-11 at Hashemi. Hashemi was attempting to unbuckle his seat belt when Maldonado suddenly shot him with the .380 caliber pistol. Ballistics testing confirmed that Hashemi was killed by the .380 caliber pistol purchased by Maldonado. Gonzalez stated that he was in shock and did not unlock the passenger door of the van for Maldonado so Maldonado ran back to the vehicle driven by Juarez. Juarez drove off. Gonzalez got in the minivan with Hashemi still in the driver's seat and followed Juarez. Shortly thereafter, Maldonado got out of Juarez's vehicle and sat in the passenger seat of the minivan. At some point the minivan passed Juarez and turned off onto a dirt road, where it got stuck. Maldonado, Juarez, and Gonzalez were approached by the landowner who told them to leave.

After getting the minivan unstuck, Maldonado drove the minivan to Ennis Paint where he had just recently stopped working. Juarez followed in the second vehicle. Maldonado and Gonzalez dragged Hashemi's body into the woods near Ennis Paint and left it. The minivan was abandoned at a different location and burned by

Maldonado after he removed two envelopes with money. Gonzalez took a third envelope of money from the minivan. The masks, rubber gloves, and the t-shirt Maldonado was wearing were thrown out of the window of the car on the same road where the minivan was abandoned. Various DNA testing on the masks, gloves, clothes, and shoes allegedly worn by Maldonado and Gonzalez showed blood that was linked to Hashemi. Additionally, Maldonado and Gonzalez could not be excluded from other DNA recovered off of those items. Juarez's DNA was not found on any articles.

Maldonado gave Juarez and Gonzalez some of the money. Sometime after the offense, Gonzalez learned Hernandez's identity. Hernandez wanted half of the proceeds from the robbery, although Maldonado stated that he did not intend to give Hernandez any money. Maldonado, Juarez, and Gonzalez then used cocaine purchased by Maldonado after the offense. Maldonado and Juarez went to a casino in Oklahoma shortly thereafter.

The day after Hashemi's death Maldonado, Juarez, Gonzalez, and Maldonado's uncle, Michael Salazar, went to purchase a new cell phone for Juarez because he had intentionally broken his after the robbery and murder. They then went to Irving to use cocaine and marijuana at Salazar's apartment, although Juarez did not use drugs at that time, and to get tattoos. Salazar's neighbor, Ariel Armas testified that Maldonado and Juarez told Salazar and him that Maldonado had shot Hashemi. Juarez said that it was a robbery gone bad and that he did not intend for anyone to be shot, although Armas

believed that Juarez and Maldonado both were bragging about it. Gonzalez was bragging about the incident as well. Maldonado and Juarez indicated that the robbery was planned by an unnamed fourth person who worked at the Exxon. Maldonado had approximately $4,000 and Gonzales had approximately $1,000. Before they left they taped money in an envelope. Maldonado, Juarez, and Gonzalez borrowed a vehicle from Salazar to return to Ennis in which they were apprehended. Money and cocaine were found in the trunk of that car.

In the early morning hours of the day after Hashemi's death, all of the employees of the Exxon operated by Hashemi were called in for questioning because Hashemi was missing. An employee had to leave and go get Hernandez because he did not have a ride. After reviewing the security camera footage it was shown that Hernandez had been surreptitiously texting on his cell phone the night before. After being questioned, Hernandez admitted his involvement in the robbery and that "they had been trying to get me to set up a robbery for three weeks." His second written statement claimed that he had done it because he and his loved ones had been threatened. Hernandez led law enforcement to Juarez and Maldonado's homes. Hernandez was arrested for his involvement in the robbery.

A search of Juarez's bedroom in his parents' home led to the discovery of two boxes of nine millimeter ammunition and two magazines that appeared to fit a Mac-11.

A search of Maldonado's mother's home resulted in the discovery of the .380 caliber pistol later determined to be the weapon used to kill Hashemi, a Mac-11, and a shotgun.

Maldonado gave a statement after his arrest where he admitted only to burning the minivan but claimed that an individual named Francisco Soto had committed the robbery and murder. Maldonado led police to Hashemi's body. The phone number Maldonado gave for Soto was the same as Hernandez's but the last four digits were in a different order. No one fitting the name and description provided by Maldonado was ever located.

Cell phone records from Maldonado, Juarez, and Hernandez showed that there were text messages and phone calls during the time leading up to the robbery/murder primarily between Hernandez and Juarez. Text messages which were retrieved showed that Juarez asked Hernandez if Hashemi was there and how much money there was. Hernandez replied that there was "9." Hernandez also sent Juarez a text message to inform him that Hashemi had left.

Gonzalez, a juvenile at the time of the offense, was given a plea bargain of 45 years in prison for the murder and robbery and 20 years in prison for arson in exchange for his truthful testimony at trial. Juarez had given a statement to the investigator for the district attorney as well, but no agreement was reached on a plea bargain. In his statement, Juarez admitted to being involved in the planning, sending the text messages, being present at the robbery, and described the events of the shooting which

were similar to Gonzalez's with the exception that Hernandez and Maldonado were not listed by name.

*Analysis*

A person commits capital murder if he intentionally causes the death of an individual while in the course of committing or attempting to commit robbery. Tex. Pen. Code Ann. § 19.03(a)(2) (West 2011); *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), *cert denied*, 510 U.S. 852, 114 S. Ct. 154, 126 L. Ed. 2d 115 (1993); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd). The law of parties applies to the offense of capital murder. *Johnson*, 853 S.W.2d at 534; *Frank*, 183 S.W.3d at 72.

A person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (West 2011).

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Pen. Code Ann. § 7.01(a); *Frank*, 183 S.W.3d at 72. A person is "criminally responsible" for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2); *Frank*, 183 S.W.3d at 72. Evidence is sufficient to convict under the law of parties when the defendant is physically present

at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, 519 U.S. 1030, 117 S. Ct. 587, 136 L. Ed. 2d 516 (1996); *Frank*, 183 S.W.3d at 72-73. In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom*, 920 S.W.2d at 302; *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101, 106 S. Ct. 1942, 90 L. Ed. 2d 352 (1986); *Frank*, 183 S.W.3d at 73.

> Further, section 7.02(b) of the penal code provides that
>
> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PEN. CODE ANN. § 7.02(b).

The jury was instructed that it could find Hernandez guilty of capital murder in any of three different ways: (1) as a principal; (2) as a party under section 7.02(a)(2) of the Texas Penal Code; and (3) as a co-conspirator under section 7.02(b) of the Texas Penal Code. The jury was then instructed that if it had a reasonable doubt as to Hernandez's guilt of capital murder, the jury was to then consider whether Hernandez was guilty of murder. The jury returned a general verdict finding Hernandez guilty of

murder; therefore, if the evidence is sufficient to support a guilty finding under any of the allegations submitted, we must uphold the jury's guilty verdict. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

Hernandez argues that the evidence is insufficient for the jury to have found that he was guilty of murder because there was insufficient evidence to show that he was guilty as the shooter or as a party. Hernandez does not argue that Maldonado did not intentionally murder Hashemi, but does contend that it was not in furtherance of the robbery and that it should not have been anticipated.

Viewing the evidence in a light most favorable to the verdict, we find that the evidence showed that Hernandez was involved in the planning of the robbery and its execution. Armas testified that Maldonado and Juarez said that an employee of the Exxon planned the robbery, and the text messages between Hernandez and Juarez establish that Hernandez was involved prior to the commission of the robbery. Hernandez's statement admitted that he had known about the plan and desire to commit the robbery for at least several weeks before its commission. Hernandez thought he was to receive half of the proceeds from the robbery. There was also evidence that Hernandez had initiated a discussion with Juarez about robbing Hashemi months prior to the actual commission of the crime. It was not unreasonable for the jury to infer that the planning of the robbery involved how to ambush Hashemi on the way to the bank and weapons would be necessary to effect that ambush. It was also not

unreasonable for the jury to infer that by taking loaded firearms to a robbery that murder might occur if the robbery did not go according to plan. Viewing the evidence in a light most favorable to the verdict, we find that the evidence was sufficient for the jury to have determined that Hernandez was guilty of murder pursuant to section 7.02(b) of the Penal Code. We overrule issue one.

*Jury Charge Error*

Hernandez complains that the trial court erred by refusing to include an instruction on the affirmative defense of duress in the jury charge. Section 8.05(a) of the Penal Code states that it is an affirmative defense to prosecution if a defendant committed the offense because he was "compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PEN. CODE ANN. § 8.05(a) (West 2011). The State argues that there was no evidence of an immediate threat to Hernandez or his family; therefore Hernandez was not entitled to the instruction.

There are two components of immediacy in determining whether a threat was imminent. *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). First, the person making the threat must intend and be prepared to carry out the threat immediately. *Id*. Second, carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Id*. The Texas Court of Criminal Appeals has determined that a threat of death at some

indefinite time in the future is insufficient to satisfy the requirement of imminence. *Blount v. State*, 542 S.W.2d 164, 166 (Tex. Crim. App. 1976).

We agree with the State that there was no evidence of an immediate threat to Hernandez or his family. Therefore, the trial court's refusal to include the instruction was not erroneous. We overrule issue two.

*Exclusion of Evidence*

In his third issue, Hernandez complains that the trial court abused its discretion by not allowing him to confront and cross-examine Gonzalez regarding gang membership as well as other offenses committed by Gonzalez, Juarez, and Maldonado in the days prior to the robbery and murder of Hashemi. In his fourth issue, Hernandez complains that the trial court erred by excluding the evidence of gang activity and the other offenses because it was relevant to his affirmative defense of duress and his lack of intent to commit the offense. In his fifth issue, Hernandez complains that the trial court erred by not allowing the entire statement of Gonzalez to be admitted into evidence under rule 107 of the rules of evidence. Prior to trial, Hernandez, Juarez, and Maldonado were given copies of a written statement made by Isaiah Gonzalez which included statements regarding Gonzalez being "jumped" into a gang of which Juarez and Maldonado were members, and committing at least two other offenses prior to the murder with Juarez, Maldonado, and other gang members.

Prior to Hernandez cross-examining Gonzalez, in a hearing outside of the presence of the jury, Hernandez objected to not being allowed to cross-examine Gonzalez about his claims regarding gang affiliation and other offenses committed by Gonzalez, Juarez, and Maldonado prior to the robbery and murder of Hashemi that were contained in his written statement. At that time, Hernandez offered the written statement into evidence. The trial court overruled Hernandez's objection relating to the evidence of the other offenses. However, the trial court told Hernandez to re-urge his objection to the gang evidence during his case-in-chief because the allegations of gang activity related solely to his affirmative defense of duress, and at that time there was no evidence of duress. At that time the trial court also deferred Hernandez's request to make an offer of proof of Gonzalez's testimony regarding his potential interest or bias until his case-in-chief, at which time the trial court would determine the ultimate admissibility of the gang-related evidence. The trial court did rule that Hernandez could cross-examine Gonzalez as to any other matter contained in the statement or Gonzalez's agreement with the State. The trial court did not specifically rule on Hernandez's objection to Rule of Evidence 107, but referred to all of his objections globally in his ruling at that time.

A hearing outside of the presence of the jury was conducted prior to the start of Hernandez's case-in-chief at which time Hernandez made his offer of proof and called multiple witnesses regarding the alleged gang activity of Gonzalez, Juarez, and

Maldonado. Gonzalez was called to testify at that time and was asked whether or not he, in fact, committed a burglary and a robbery with Maldonado and Juarez days before the robbery and murder of Hashemi and whether Gonzalez was a member of a gang. Gonzalez refused to answer those questions by invoking his right against self-incrimination. Gonzalez was not asked about whether he believed there would be any potential effect of his testimony on the resolution of those offenses. Gonzalez had not been formally charged with either of the other offenses and there was no evidence or other indication that he would be formally charged.

*Denial of Right to Confront and Cross-Examine*

Gonzalez complains that he was denied his right to confrontation and to cross-examine Gonzalez pursuant to rule 613 of the rules of evidence. *See* TEX. R. EVID. 613. The State argues that the prior offenses are not admissible pursuant to rule 608 of the rules of evidence. Rule 608 forbids inquiry into specific instances of a witness's conduct for the purpose of attacking or impeaching that witness's credibility. TEX. R. EVID. 608(b). However, the Texas Court of Criminal Appeals has recognized Rule 613, which permits the use of "extrinsic evidence to show bias or interest[,]" as an exception to Rule 608. *Billodeau v. State*, 277 S.W.3d 34, 40 (Tex. Crim. App. 2009).

In order for evidence of unadjudicated offenses to be admissible, the party attempting to use evidence of criminal matters involving a witness to insinuate that the witness may have a bias favoring the State must establish some causal connection or

logical nexus between the charges and the witness's potential bias. *Irby v. State*, 327 S.W.3d 138,147-49 (Tex. Crim. App. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 904, 178 L. Ed. 2d 760 (2011), *quoting Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998).

In his offer of proof, Hernandez questioned Gonzalez solely on whether he committed the offenses and did so as a member of a gang with Juarez and Maldonado. He did not question him on whether or not he thought his testimony would have any effect with the State regarding any potential outcomes of those offenses. Gonzalez had not been formally charged with the offenses and there was no evidence or argument that he would be. We find that there was no evidence presented to create a nexus between the other offenses and Gonzalez's testimony in the capital murder trial. The trial court's decision to exclude the evidence was not outside of the zone of reasonable disagreement, and therefore, was not erroneous. We overrule issue three.

*Relevance to Duress and Mens Rea*

Hernandez complains in his fourth issue that the evidence regarding gang membership and other offenses was erroneously excluded because it was relevant to the affirmative defense of duress and whether he had the *mens rea* to engage in the conspiracy to commit the underlying felony of the robbery.

In order for evidence to be relevant to a defense of duress, the evidence of a threat of imminent death or serious bodily harm must be a present threat. *Smith v.*

*State*, 949 S.W.2d 333, 336 (Tex. App.—Tyler 1996, pet. ref'd); *Kessler v. State*, 850 S.W.2d 217, 222 (Tex. App.—Fort Worth 1993, no pet.).

Hernandez's offer of proof included testimony regarding gang membership of Gonzalez, Juarez, and Maldonado, as well as Gonzalez's statement that described other crimes Gonzalez, Juarez, and Maldonado had committed in the days prior to the robbery and murder of Hashemi. Hernandez complains that the trial court's exclusion of this evidence prevented him from presenting his defense of duress. However, nothing in his offer of proof or the other evidence at trial provided evidence of an imminent threat of harm to Hernandez or his family. *See McDowell v. State*, 235 S.W.3d 294, 297 (Tex. App.—Texarkana 2007, no pet.) ("A threat made six months before the threatened event is not an imminent threat."); *Anguish v. State*, 991 S.W.2d 883, 886-87 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding threat made four days prior to robbery was not imminent); *Smith*, 949 S.W.2d at 336 (concluding that threat made four months earlier was not imminent). Because the excluded factual testimony did not relate to an imminent threat, the trial judge did not abuse his discretion by deciding the proffered evidence was irrelevant to Hernandez's duress defense. *See Anguish*, 991 S.W.2d at 887; *Smith*, 949 S.W.2d at 336-37.

Hernandez also contends that the evidence was relevant to show that Hernandez did not have the required intent to enter into a conspiracy to commit the robbery at all. However, in his written statement admitted into evidence before the jury, Hernandez

admitted to being involved in setting up and assisting in the commission of the robbery, but contended that he did so because of threats against him and his family. He did not contend that he was not involved in the robbery; rather his argument at all times was that he participated because he was under duress. Hernandez did not object to the trial court on the basis that he did not participate in the robbery at all; therefore this portion of his issue was not preserved. *See* TEX. R. APP. P. 33.1(a). We overrule issue four.

*Rule of Optional Completeness*

In his fifth issue, Hernandez complains that the trial court erred by not admitting the written statement of Gonzalez in its entirety and the written agreement Gonzalez made with the State in exchange for his testimony pursuant to the rule of optional completeness. *See* TEX. R. EVID. 107. Hernandez argues that the portions of Gonzalez's written statement regarding gang membership and the other offenses were necessary to show the relationship between Gonzalez, Maldonado, and Juarez and that the robbery and murder of Hashemi were part of a continuing criminal episode of their gang. Hernandez made this objection at the start of his cross-examination of Gonzalez.

Rule 107 permits the introduction of previously inadmissible evidence when that evidence is necessary to fully explain a matter that has been raised by the adverse party. TEX. R. EVID. 107; *Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Walters*, 247 S.W.3d at 218. The

evidence introduced must be on the same subject; the rule does not permit the introduction of other similar but inadmissible evidence unless it is necessary to explain properly admitted evidence. *Walters*, 247 S.W.3d at 218; *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2003). And rule 107's scope is limited by rule 403, which permits a trial judge to exclude otherwise relevant evidence if the unfair prejudicial effect of it or its likelihood of confusing the issues substantially outweighs its probative value. *Id*.; *see* TEX. R. EVID. 403.

We have previously determined that the gang evidence and evidence of other offenses were not relevant to the issues in the trial. That evidence, likewise, was not necessary to explain the evidence of the offense itself. Hernandez admitted to participating in the execution of the offense, and had known about it for at least several weeks prior to its commission. Additionally, there was testimony from one of the officers during Hernandez's offer of proof that Hernandez was believed to be a member of the same gang. The trial court's decision not to admit the written statement of Gonzalez at the time of Hernandez's objection was not outside of the zone of reasonable disagreement and was therefore not an abuse of discretion. We overrule issue five.

*Motion to Sever*

In his sixth issue, Hernandez complains that the trial court abused its discretion by denying a motion to sever made by counsel for Juarez during the trial and adopted by him. The motion was made because Juarez contended that Hernandez's pursuit of a

duress defense at trial coupled with potential allegations of gang activity created a substantial risk that he would not be tried solely on the offense alleged.

The State filed a motion to join the defendants' cases for trial which the trial court granted on April 15, 2011. At the hearing, counsel for Hernandez objected to the joinder because he argued that it was not timely and that Hernandez was less culpable than Juarez and Maldonado. Counsel for Juarez and Maldonado did not oppose the motion. On May 2, 2011, at a pretrial hearing there was discussion regarding Hernandez's defense that he had been forced to be involved by "the gang." No request for severance was made by any party at that time. On either May 2 or May 7, 2011,[3] the State gave notice to the defendants of the agreement between the State and Gonzalez which included allegations of other offenses committed and gang activities. The jury was selected on May 12, 2011 and testimony began on May 16, 2011. After three witnesses testified, Hernandez argued that the door had been opened regarding gang activity, and a severance was mentioned at trial for the first time.

The next day there was discussion outside of the presence of the jury regarding the agreement with Gonzalez which included allegations of gang activity and other offenses involving Gonzalez, Juarez, and Maldonado. At that time, Juarez made an oral motion to sever, which the trial court allowed to be adopted by Hernandez and Maldonado. Later that day, on May 17, 2011, Juarez filed a written motion to sever.

---

[3] The record is conflicting as to which date is correct.

The State argued that the motion was not filed timely. The trial court denied the motion to sever.

Hernandez concedes that the trial court did not abuse its discretion by consolidating the cases for trial initially; however, he contends that at the time Juarez made his motion to sever that the trial court's denial of that motion denied him the right to present a full defense, which was that the offense was committed as part of an ongoing criminal conspiracy by a gang; that he was not part of a conspiracy to rob Hashemi; and to support his affirmative defense of duress. The State argues that the motion to sever was not made timely and not properly preserved because the substance of Hernandez's defense was known well before Juarez's motion was made.

We agree with the State that Hernandez's joinder of the motion to sever was untimely; Hernandez made it known to the parties and the trial court that his defense would be one of duress by gang members. Hernandez was in possession of Gonzalez's statement days before the start of the trial that included references to other crimes and gang activity. However, Hernandez did not move for a severance at that time. To be timely, a motion for severance must be made before trial if the factual basis for seeking a severance was known prior to trial. *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006). Otherwise, the motion must be made "at the first opportunity or as soon as the grounds for [severance] become apparent or should have become apparent." *Id.* We

find that Hernandez's motion to sever was not made timely and therefore the trial court did not err by denying the motion.  We overrule issue six.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 25, 2013
Do Not Publish
[CRPM]